**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIGRAN TANASHYAN,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-04455-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I.
## INTRODUCTION

On August 7, 2026, petitioner Tigran Tanashyan, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."), supported by exhibits. Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends his detention violates his rights to procedural and substantive due process under the Fifth Amendment, the Administrative Procedure Act ("APA"), and the implementing regulations of the Immigration and Nationality Act ("INA"). Petitioner seeks immediate release from immigration custody or, in the alternative, a bond hearing, as well as declaratory and other injunctive relief.

On August 14, 2026, respondents filed an Answer supported by exhibits. Docket no. 10. Petitioner filed a reply on August 17, 2026. Docket no. 11. On August 20, 2026, respondents filed a Notice of Intended Removal, indicating petitioner is to be removed to Armenia on or after September 1, 2026. Docket no. 12.

For the reasons discussed below, petitioner has shown respondents violated his right to due process when they re-detained him without following their own regulations. The court therefore recommends that the Petition be granted and a writ of habeas corpus be issued requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a native and citizen of Armenia. Pet. ¶ 13.[1] Petitioner entered the United States at the Los Angeles International Airport on May 21, 2021. *See* Answer, Ex. B. Immigration officials served petitioner with an expedited removal form I-860 that day and returned him to Armenia. *See id*.

On September 20, 2021, petitioner re-entered the United States and was apprehended by immigration officials in Calexico, California. Pet. ¶ 20; *see* Answer, Ex. B. On October 8, 2021, immigration officials served petitioner with a Notice of Intent/Decision to Reinstate Prior Order. *See* Answer, Exs. B-C. Petitioner claimed fear of returning to Armenia. *See id*., Ex. B. A U.S. Citizenship and Immigration Services Asylum officer conducted a reasonable fear interview on October 15, 2021, and issued a negative determination on October 18, 2021. Pet. ¶ 21; *see* Answer, Ex. B. An immigration judge affirmed the negative reasonable fear determination on November 2,

---

[1] The Petition is signed only by petitioner's counsel and is not verified by petitioner. To the extent facts are alleged in the Petition, the court presumes the facts are accurate: (1) for the purposes of Part II of this opinion and if not disputed by respondents; (2) if supported by documents submitted by petitioner as part of the Petition; or (3) if the information could have been within counsel's personal knowledge.

2021. Pet. ¶ 21; *see* Answer, Ex. B. On December 12, 2021, petitioner submitted a request for reconsideration of the negative fear determination, which was denied. *See* Answer, Ex. B.

On December 22, 2021, petitioner was released from custody on an order of supervision ("OSUP"). Pet. ¶ 22, Ex. 1; *see* Answer, Ex. B. Following his release, petitioner lived in the Los Angeles area. Pet. ¶ 22. Petitioner filed an application for asylum on August 11, 2024. *Id.* ¶ 22, Ex. 2.

On August 4, 2026, petitioner appeared at a routine ICE check-in, when ICE officers arrested him. Pet. ¶ 23. Petitioner alleges he did not have prior notice or an opportunity to be heard. *See id.* ¶¶ 23, 71. But the record reflects that petitioner was indeed provided a Notice of Revocation of Release on August 4, which stated ICE was seeking a travel document to effect his removal to Armenia. Answer, Ex. A. The Notice of Revocation reflects that petitioner was to receive an informal interview that same day. *See id.*

Two days later, on August 6, 2026, petitioner filed an application for a stay of deportation or removal with ICE. Pet. ¶ 24, Ex. 4. On August 15, 2026, petitioner filed a motion to reopen or reconsider a decision of an immigration judge. Reply, Ex. 1.

## III.

## DISCUSSION

Petitioner effectively raises four claims, that his detention violates: (1) his right to procedural due process under the Fifth Amendment; (2) his right to substantive due process under the Fifth Amendment; (3) the APA, his due process rights, and the *Accardi* doctrine for failure to comply with the implementing regulations[2]; and (4) the APA, 5 U.S.C. § 706(2)(C), and constitutes an *ultra vires* action. Pet. ¶¶ 65-113. Respondents argue the Petition should be denied because they properly revoked petitioner's supervised release. Answer at 1.

2 *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), requires government agencies to follow their own regulations.

**A. <u>This Court Has Jurisdiction Over the Claims in the Petition</u>**

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because, inter alia, his re-detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. ¶¶ 65-90. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>Respondents' Failure to Comply with INA Regulations Violated Petitioner's Right to Due Process</u>**

Petitioner argues respondents violated his right to due process by failing to comply with their own regulations. Pet. ¶¶ 71-74, 81-90. Specifically, petitioner contends: (1) respondents failed to give him notice of the reasons for revocation and an opportunity to be heard; and (2) the ICE official who signed the notice of revocation did not have the authority to do so under 8 C.F.R. § 241.4(l)(2). *Id*.

ICE's authority to detain and remove a noncitizen subject to a final order of removal derives from 8 U.S.C. § 1231. *See* 8 U.S.C. § 1231. After a final order of removal has been issued, the government has a 90-day period to remove the noncitizen from the country, during which detention is mandatory. 8 U.S.C. § 1231(a)(1)-(2). After the 90-day removal period concludes and removal has not been effectuated, the government may either release the noncitizen subject to supervision or detain him under the authority of § 1231(a)(6). *See* 8 U.S.C. § 1231(a)(3), (6); *Nguyen v. ICE*, 2026 WL 1196086, at *3 (C.D. Cal. Apr. 28, 2026); *Quiroz Lopez v. Bondi*, 2026 WL 923370, at *2 (W.D. Wash. Apr. 6, 2026). Section 1231(a)(6) allows the government to detain the noncitizen beyond the 90-day period, but the Supreme Court found that the indefinite detention of a non-citizen "would raise serious constitutional concerns," and so held the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 682, 689 (2001). The Court found a sixth-month period of detention is presumptively reasonable. *Id.* at 701; *see also Abramian v. Bondi*, 820 F. Supp. 3d 1050, 1057 (C.D. Cal. 2026); *Zhao v. Kelly*, 2017 WL 1591818, at *2 (C.D. Cal. Apr. 27, 2017). "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence to rebut that showing. *Zadvydas*, 533 U.S. at 701.

Upon release from detention, a noncitizen subject to a final order of removal must comply with conditions of release. *See* 8 U.S.C. § 1231(a)(3), (6); *Hoac v. Becerra*, 2025 WL 1993771, at *3 (E.D. Cal. Jul. 16, 2025). The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) "govern how and when ICE may revoke the release of a noncitizen who has been ordered removed, detained, and then released after ICE is unable to execute the order of removal." *Phouvieng K. v. Andrews*, 2025 WL 3265504, at *4 (E.D. Cal. Nov. 24, 2025); *Nguyen*, 2026 WL 1196086, at *3. "Section 241.4 applies to noncitizens who have been ordered removed in general, while § 241.13 specifically applies to noncitizens whom the government has determined there is no significant likelihood that they can be removed in the reasonably foreseeable future." *Machuca Del Cid v. Mullin*, 2026 WL 1295891, at *2 (W.D. Wash. May 12, 2026) (citation omitted, cleaned up). Under both, revocation of release is allowed under two circumstances. First, if a noncitizen violates any of the conditions of their release, they may be returned to custody. 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(2)(ii). Second, a noncitizen's release may be revoked "if, on account of changed circumstances, the [agency] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); *see* 8 C.F.R. § 241.4(l)(2)(iii).

When ICE makes the determination that a noncitizen's OSUP should be revoked, the regulations require that certain procedural requirements be followed. The noncitizen is entitled to notice of the reasons for revocation of release and an "informal interview promptly after his or her return to [] custody to afford [him or her] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); *see Hoac*, 2025 WL 1993771, at *3. The two provisions differ in that § 241.4(l)(2) grants authority to revoke release to only the "Executive Associate Commissioner" or a "district director," when revocation is in the public interest and circumstances do not reasonably permit referral of the case to the "Executive Associate Commissioner"; whereas § 241.13 "does not limit the authority to revoke release to certain designated officials." *Pogosyan v. Bondi*, 2026 WL 544717, at *3 (C.D. Cal. Feb.

23, 2026); *Gazayan v. Bondi*, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025). "Government agencies are required to follow their own regulations." *Hoac*, 2025 WL 1993771, at *4 (citing *Accardi*, 347 U.S. at 268).

**1. <u>Notice and Informal Interview</u>**

Here, the record reflects that respondents provided petitioner with a Notice of Revocation of Release the day he was taken into custody, August 4, 2026. Answer, Ex. A. The notice notified petitioner that his release was being revoked pursuant to § 241.4(l) because ICE was seeking a travel document to effect his removal to Armenia. *Id.* It also notified petitioner that it would conduct an informal interview that same day in order to afford him the opportunity to respond. *Id.* Respondents subsequently obtained the travel document and served it and a Notification of Removal on petitioner on August 20, 2026. *See* docket no. 12, Ex. A. Petitioner argues it is questionable whether the Notice of Revocation of Release was actually served on him because it is unsigned; however, petitioner has not submitted a declaration or other evidence establishing that he neither received a notice nor was provided an informal interview. *See* Reply at 7. Moreover, the proof of service on the notice indicates that petitioner refused to sign. *See* Answer, Ex. A. As such, the evidence shows respondents complied with § 241.4(l)(1).

**2. <u>The Authority to Revoke Release</u>**

Petitioner also argues respondents failed to comply with the regulations because the official who authorized the revocation was not an Executive Associate Director as required by § 241.4(l)(2). Pet. ¶¶ 85-86.

Section 241.4(l)(2) authorizes either an "Executive Associate Commissioner" or "district director" to revoke releases. 8 C.F.R. § 241.4(l)(2). "Executive Associate Commissioner" and "district director" refer to previous Immigration and Naturalization Service positions. *See* 8 C.F.R. § 1.2. Recognizing this, the governing regulations have redefined these terms such that, after March 1, 2003, "Commissioner" refers to the "Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs

Enforcement," and "district director" refers to an "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge." *See id.*

According to the Notice of Revocation here, Assistant Field Office Director Rogelio R. Gudino authorized the revocation of petitioner's release. *See* Answer, Ex. A. As recounted above, a "district director" is defined to include a "director, field operations," but the written definition does not include assistant field office directors. Many courts have found that they cannot conclude an assistant field office director has the authority to revoke release because it is "far from clear" that the term "district director" includes an assistant field office director. *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 13u, 162 (W.D.N.Y. 2025); *see, e.g., Ibarra-Lopez v. Lyons*, 2026 WL 1706983, at *5 (E.D. Cal. Jun. 11, 2026), report and recommendation rejected on other grounds) by 2026 WL 2428026 (E.D. Cal. Aug. 9, 2026); *Mbongo v. Raycraft*, 809 F. Supp. 3d 762, 766 (N.D. Ohio 2025); *Ndoye v. Joyce*, 2026 WL 306387, at *5 (S.D.N.Y. Feb. 5, 2026). The court finds these cases persuasive. While it may serve the agency to delegate authorization to an assistant, the court is constrained by the regulatory language, which plainly states that only an "Executive Associate Commissioner" and "district director" have the authority to revoke release, and which defines "district director" to include a number of positions, none of which is an *assistant* field office director. *See* 8 C.F.R. §§ 241.4(l)(2) and 1.2.

Respondents in fact do not argue that § 241.4(l)(2) grants an assistant field office director such authority. Instead, respondents argue at length that because other provisions of § 241.4, namely §§ 241.4(c)(4) and 241.4(h)(5), have broad scopes of delegation (including to "field office staff"), then § 241.4(l)(2)(iii) must similarly have the same broad delegation scope. *See* Answer at 5-6. But §§ 241.4(c)(4) and 241.4(h)(5) concern custody determinations and custody review procedures, not determinations of revocation of release. *See Gazazyan*, 2025 WL 3898484, at *7; 8 C.F.R. §§ 241.4(c)(4), 241.4(h)(5). Moreover, as discussed above, the plain language of § 241.4(l)(2) limits

authority to make revocation determinations to the "Executive Associate Commissioner" or "district director," and the list of positions to which district director refers does not include assistant field officer director. 8 C.F.R. §§ 241.4(l)(2) and 1.2.

"'[S]everal federal courts . . . have held that a failure to adhere to the requirement that an Executive Associate Director or a Field Office Director make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release.'" *M.P.P.P. v. Santacruz*, 2026 WL 1601908, at *4 (C.D. Cal. Jun. 1, 2026) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2841886, at *4 (D. Md. Oct. 7, 2025)); *see, e.g. Miller v. Mullin*, 2026 WL 1802427, at *6 (C.D. Cal. Jun. 18, 2026); *Ndoye*, 2026 WL 306387, at *10; *Gazayan*, 2025 WL 3898484, at *10; *Gazazyan*, 2025 WL 3898484, at *10; *Ceesay*, 781 F. Supp. 3d at 162. The court so concludes here.

Accordingly, habeas relief is warranted because respondents' failure to follow the regulations violated petitioner's due process rights.

**C. <u>Petitioner's Remaining Claims</u>**

Petitioner also argues that respondents have violated his rights to substantive due process under the Fifth Amendment and the APA, and that respondents' actions were ultra vires. Pet. ¶¶ 76-80, 91-113. Because the court has already concluded that petitioner is entitled to release based on a due process violation due to respondents' failure to follow regulations, it need not address petitioner's remaining claims. Petitioner may raise the claims again if he is subject to any future detention.

**IV.**

**<u>ORDER</u>**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Tigran Tanashyan (A# 220-146-193) from immigration custody, subject to appropriate conditions of supervision; (3) respondents shall return any confiscated property and documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they follow all procedures set forth in 8 C.F.R. § 241.4, and any other

applicable statutory and regulatory procedures; and (5) respondents shall file a status report no later than September 1, 2026, confirming that petitioner has been released from respondents' custody.

Dated: August 27, 2026

SHERI PYM
United States Magistrate Judge